IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| FREDDIE R. COLEMAN, #618875 | § | |
| VS. | § | CIVIL ACTION NO. 9:10cv135 |
| DAVID SWEETIN, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF PARTIAL DISMISSAL

Plaintiff Freddie R. Coleman, a prisoner confined at the Eastham Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on September 27, 2010. On April 21, 2011, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The Plaintiff testified as to the factual basis of his claims. Assistant Warden Dwayne Dewberry, Regional Grievance Supervisor Ginger Lively and Nurse Tara Patton attended the hearing and testified under oath about prison policies and information contained in the Plaintiff's prison records.

The lawsuit concerns the Plaintiff falling in the shower and his efforts to obtain medical care for his injuries. The Plaintiff initially fell in the shower at the Eastham Unit trusty camp on

June 14, 2009. He fell again in the same shower on June 20 and June 23, 2009. He testified that the floor to the shower was slimy and unsafe. Before he ever fell, he submitted letters ("I-60s") to Maintenance Specialist Richard Cowan and Maintenance Supervisor Roy Brown about the conditions in the showers, but they did not take steps to correct the problem. Wardens Sweetin and Oliver were made aware of the conditions, but they failed to take corrective action.

When the Plaintiff fell on June 14, 2009, other inmates helped him to the officer's desk to report the accident. He told Officer Dale that he was in severe pain. She told him that he knew there was no one in the infirmary at that time in the evening and that he would have to wait to receive medical care in the morning. She did not do anything to help him. The same thing occurred with respect to Officer Cobbs on June 20, 2009.

The Plaintiff was taken to the infirmary after his fall on June 23, 2009. He told P. A. McManus that he was in excruciating pain and that he could not move his right leg. McManus ordered x-rays. A nurse looked at the x-rays and stated that it did not appear that anything was broken. McManus also looked at the x-ray. She indicated that the x-rays revealed that he had a bad case of arthritis but it did not appear that anything was broken. The x-ray technician indicated that she thought there was more to the x-ray than just arthritis, but McManus dismissed the x-ray technician's comments and sent the Plaintiff back to the trusty camp. McManus denied his request to stay in the building. She also told him, "I'm not giving you no narcotic for pain."

The Plaintiff testified that he subsequently submitted many sick call requests regarding his hip. On July 6, 2009, the unit was placed on an annual lockdown. During the days that followed, he was in severe pain and could not get up. On July 10, 2009, Nurse Practitioner Hough and Nurse Wright made rounds in the dorm. He told them that he was in severe pain.

Hough told him that she could not examine him in the dorm and that she could not send him to the infirmary unless he was bleeding or dying and that he did not satisfy either criteria. She added that she could not send for him until the lockdown was over. Hough did not do anything to help him at that time. The medical records reveal that Hough observed that he ambulated with difficulty. Her assessment was hip pain. She ordered crutches for ten days, along with prednisone. She made a notation that the pill window was to be notified that he had not been receiving his medications.

On either July 11 or 12, 2009, Assistant Warden Erwin and Major Fisher were making rounds in the Plaintiff's housing area. The Plaintiff told them that his hip was broken. They wrote down his name and number and indicated they would check into the matter. The Plaintiff testified that they did not do anything.

On July 13, 2009, the Plaintiff went to a disciplinary proceeding before Captain Blake Lamb. The Plaintiff asked Captain Lamb to help him obtain medical care, but Captain Lamb refused. He told the Plaintiff that the purpose of what they were doing at that time was the disciplinary proceeding and that he was not running sick call. Captain Lamb did not do anything to help him.

The lockdown was finally lifted, and Hough saw him on July 17, 2009. She issued instructions to have another set of x-rays made. She would not give him pain medication. She told him that the x-ray technician would not be back for three days and that the x-rays would not be made until she returned. Hough refused his request to make arrangements for him to have emergency x-rays before then. She also refused to give him pain medication. The medical records reveal that she observed that he had difficulty getting on and off of the exam table. Her

3

assessment was right hip pain and right knee pain. She ordered crutches and a lay-in for fifteen days, along with the x-rays.

A new set of x-rays were made on July 21, 2009. The x-rays revealed a fracture at the base of the femoral neck. The Plaintiff was transported to John Sealy Hospital on the following day for surgery, which included the use of a plate and screws. The Plaintiff was eventually returned to the Eastham Unit. A physician assistant told him that he was not permitted to prescribe him narcotics for pain. He also told him that "he'll be hurting to Jesus comes back."

Nurse Patton testified that the medical records were extensive and that they documented the Plaintiff's requests for medical care. The records also showed that the fracture was not discovered until the second set of x-rays. The Plaintiff was then sent to Galveston, where surgery was performed.

Regional Grievance Supervisor Lively testified that the grievance records reveal that the Plaintiff had exhausted his medical issues. He did not, however, exhaust his remaining claims. He attempted to file grievances about the responses he received from security personnel in August, 2009, but the grievances were returned as untimely submitted.

<u>Discussion and Analysis</u>

In analyzing the Plaintiff's claim, the Court initially notes that federal courts are courts with limited jurisdiction having subject matter jurisdiction only over those matters specifically designated by the Constitution or Congress. *Johnson v. United States*, 460 F.3d 616, 621 n.6 (5th Cir. 2006). The Supreme Court has held that many acts that might constitute a violation of state tort law do not amount to federal violations. *Baker v. McCollan*, 443 U.S. 137, 146 (1979). *See also Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988). In this Circuit, before a plaintiff may

maintain a civil rights lawsuit, he must show an abuse of governmental power that rises to a constitutional level. *Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied*, 451 U.S. 1019 (1981).

The Plaintiff's first complaint involves the falls in the shower. It is well settled that negligence on the part of jail officials does not give rise to civil rights claims. *See Daniels v. Williams*, 474 U.S. 327 (1986); *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988). *See also Farmer v. Brennan*, 511 U.S. at 835. In *Daniels*, the Supreme Court held that claims originating from a jailer leaving a pillow on the floor and a prisoner slipping and falling over the pillow constitutes a state tort claim for negligence and does not amount to a civil rights claim under 42 U.S.C. § 1983. The Fifth Circuit has repeatedly held that claims involving a prisoner slipping and falling do not rise to the level of a constitutional violation. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999); *Marsh v. Jones*, 53 F.3d 707, 712 (5th Cir. 1995). The Plaintiff's claims at most amounts to a state claim for negligence, which is not cognizable under § 1983. The claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims against Defendants Sweetin, Oliver, Cowan and Brown should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff's remaining claims involve the responses he received to his injuries. Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable

under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

"A prison guard is deliberately indifferent if he intentionally denies or delays access to medical care." *Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992). The facts attributed to an officer must evince wanton action on the part of the officer. *Id.* Numerous Fifth Circuit cases have reiterated the basic principle in *Farmer v. Brennan* that the prison "official must be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Gordon v. Pettiford*, 312 Fed. Appx. 595, 596 (5th Cir. 2009); *Johnson v. Seckler*, 250 Fed. Appx. 648, 649 (5th Cir. 2007). In *Walker*, the Fifth Circuit

6

found that an officer was not deliberately indifferent when he made an inmate walk to the infirmary when he was unaware that the inmate had broken his ankle. 967 F.2d at 178.

In the present case, the facts as alleged do not support an inference that the Plaintiff had a serious medical need until he fractured his femur, which apparently was on June 23, 2009. Before that time, none of the Defendants were aware of facts from which an inference could be drawn that he had a substantial risk to his health or safety. The facts attributed to Officer Dale, Officer Cobbs, Warden Erwin and Major Fisher do not support an inference of deliberate indifference. For the most part, the same basic conclusion can be made with respect to the actions of the Defendants before the fracture was discovered by the use of x-rays on June 21, 2009. N. P. Hough was not aware that the Plaintiff had a serious medical need until the second set of x-rays were made. Her basic standard for a serious medical need was that the Plaintiff had to be bleeding or dying, and he did not satisfy the standard. The same thing can be said for Captain Lamb's response. The Plaintiff went before him for a disciplinary proceeding. There is no indication that he was aware of and disregarded an excessive risk to the Plaintiff's health or safety. The facts attributed to P. A. McManus are another matter. An argument can be made that she was aware and disregarded an excessive risk to the Plaintiff's health or safety when the x-ray technician told her that there was more to the x-ray than just arthritis. McManus' decision to dismiss the x-ray technician's comments and to send the Plaintiff back to the trusty camp without looking into the matter further arguably supports an inference of deliberate indifference. McManus should respond to the lawsuit. The claims against the remaining Defendants fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. Such claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The next issue for consideration is exhaustion of administrative remedies. The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. In 1996, Congress enacted the Prison Litigation Reform Act, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court accordingly unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001). The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The Supreme Court subsequently reiterated that exhaustion is mandatory and will not be excused when an inmate fails to timely exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Exhaustion also requires that a prisoner satisfy the requirement of "proper exhaustion." *Id.* at 83. The Supreme Court's most recent pronouncement on exhaustion was in *Jones v. Bock*, 549 U.S. 199 (2007). The Supreme Court stated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216. The Fifth Circuit has added, however, that after *Jones v. Bock*, a complaint is still subject to dismissal for failure to state a claim where the prisoner's failure to exhaust appeared on the face of the complaint. *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007); *Torns v. Mississippi Dept. of Corrections*, 301 Fed. Appx. 386, 389 (5th Cir. 2008).

In the present case, the grievance records reveal that the Plaintiff exhausted his medical claims. He did not, however, exhaust his claims against security personnel. He tried to exhaust

8

his claims in August 2009, but he submitted his grievances too late.  He did not satisfy the requirement that he properly exhaust his administrative remedies with respect to his claims against security personnel.  Consequently, if the Court were to permit the Plaintiff to proceed with his claims against security personnel, then they would be entitled to have such claims dismissed for failure to exhaust.

As a final matter, the Court notes that an identical Report and Recommendation (docket entry #17) was issued on April 25, 2011.  The case was subsequently referred to the undersigned pursuant to 28 U.S.C. § 636(c).  No objections were filed to the Report and Recommendation, thus this Order adopts the findings and conclusions therein.  It is accordingly

**ORDERED** that the Plaintiff may proceed with his deliberate indifference to serious medical needs claim against P. A. McManus.  It is finally

**ORDERED** that the Plaintiff's remaining claims are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

So **ORDERED** and **SIGNED** this **12** day of **May, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE